JAMES WEGMANN, Plaintiff-Appellant, *v.* THE DEPARTMENT OF REGISTRATION AND EDUCATION, Defendant-Appellee.

First District (5th Division)   No. 77-380

Opinion filed June 23, 1978.

Douglas K. Morrison and Frederick N. Aiossa, both of Chicago, for appellant.

William J. Scott, Attorney General, of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In an action brought under the Administrative Review Act (Ill. Rev. Stat. 1975, ch. 110, par. 264 *et seq.*), the trial court affirmed a decision of the Department of Registration and Education (Department) suspending plaintiff's license to practice dentistry for six months. The Department's decision to sanction plaintiff was based on a finding of the Dental Examining Committee (Committee). This Committee, composed of seven practicing dentists, hears disciplinary actions brought against dentists and submits its findings of fact and conclusions of law to the Department.

On appeal, plaintiff contends that (1) he did not receive a fair and impartial hearing in that the Committee refused his requests for discovery and for a continuance, and because his closing statement was limited to five minutes; and (2) the finding of the Committee is against the manifest weight of the evidence.

Plaintiff was charged by the Department with violating section 7(9) and (11) of the Illinois Dental Practice Act. (Ill. Rev. Stat. 1975, ch. 91, par. 62(9) and (11).) The Committee found the evidence did not establish a violation of section 7(9)—"obtaining * * * money * * * [through] false or fraudulent representations"—by submitting bills to an insurance company for services not rendered, but found plaintiff violated section 7(11)—"improper, unprofessional or dishonorable conduct"—by intentionally rendering himself insensible in whole or in part during office hours by inhaling nitrous oxide gas.

It appears that in February 1975, James Jennings, who had been a patient of plaintiff for three years, arrived at plaintiff's office for his 9 a.m. dental appointment. He entered the unlocked outer office door, walked

into an empty reception room and took a seat. Although he did not see the plaintiff, he overheard plaintiff arguing with someone in the treating room, which was located a short distance from where he was seated. Jennings stated that plaintiff's voice did not sound normal—being slow and slurred. Having waited past his 9 a.m. appointment, Jennings left the office and went back home. Later that morning, he called plaintiff to inquire about the disturbance and to make another appointment. Plaintiff told him he had been inhaling nitrous oxide gas that morning and, when Jennings asked him what that was, he told him "laughing gas." At the end of the conversation, plaintiff told Jennings to return the following Thursday.

When Jennings arrived that day, plaintiff immediately called him into the treating room. There he saw plaintiff dressed in his dental smock sitting in the dental chair holding to his mouth a small hose which was attached to several gas tanks. Plaintiff then removed the hose from his mouth and greeted him in a slurred voice. Thereupon, Jennings left the office and reported plaintiff's behavior to the Illinois State Dental Society.

In response to Jennings's complaint, Julius Ulaneck, program director for the State Dental Society, and Henry Carr, an investigator for the Department, made an unannounced visit to plaintiff's office at 9 a.m. on March 4. The investigators found plaintiff alone in his office and, after identifying themselves, told him that they had received a complaint from a patient about his use of the anesthetic gas in his office. Plaintiff invited them back into the treating room and, while answering their preliminary questions, removed several gas tanks from a cabinet, adjusted the gauges, and then sat in his dental chair with his legs hanging over one of the armrests. When not speaking, plaintiff would bring the hose up to his mouth and inhale what he said was nitrous oxide. At no time did he tell them that he was inhaling the gas to demonstrate either his procedures in setting up the apparatus or the effects of the gas. However, during the conversation he did tell them that he was having personal problems and that he used the gas because it made him "feel happy"; but, knowing that it was wrong, he was doing his best to kick the habit. He also stated that the use of nitrous oxide to get "high" by dentists in that part of the city was a common occurrence.

The investigators further testified that plaintiff had inhaled the gas during the entire half hour conversation, at the end of which they noticed a change in both his voice and demeanor. Mr. Ulaneck testified that plaintiff's voice became high-pitched and that his demeanor became jovial. Mr. Carr, who had met the plaintiff on a prior occasion regarding a different matter, testified that plaintiff's voice became slurred and that he acted as if he were under the influence of the gas.

On June 6, the Department filed a complaint charging plaintiff with

violations of section 7(9) and (11) of the Dental Practice Act, and the Committee scheduled the hearing for July 9. On June 26, plaintiff wrote to the Committee requesting additional time in order to retain counsel, and the hearing was rescheduled for September 17 with the Committee chairman informing plaintiff that no additional continuances would be granted. Three weeks before the September 17 hearing, plaintiff retained two attorneys with whom he had discussed the Department's complaint prior to the original July 9 hearing.

On September 16, the day before the scheduled hearing, plaintiff's attorneys filed their appearances, a discovery motion, and a motion for continuance. On the day of the hearing, these attorneys presented the motions to the Committee and informed it that they were not prepared to proceed, stating that they had only been retained three weeks before the hearing. The Committee, after a meeting in executive session, denied plaintiff's motions stating that plaintiff had sufficient time (three months) to retain counsel, request discovery, and to prepare a defense, and had been informed after receiving his first continuance that no additional requests would be granted. However, prior to the commencement of the hearing, the Committee allowed time for plaintiff and the Department to confer about the case.

At the hearing, plaintiff testified that he had been practicing dentistry for three years; that nitrous oxide gas is an analgesia used to deaden or reduce facial pain during dental surgery; that when Jennings arrived for his original dental appointment he must have overheard an argument defendant was having with his wife and, if his voice sounded different, it was because he had a cold; and that he did not tell Jennings during their telephone conversation later that he had been inhaling nitrous oxide gas. Plaintiff, however, admitted that he was inhaling nitrous oxide when Jennings came to his office later that week. He testified, however, that he was testing the mixture of the gas because he had just purchased a new tank of nitrogen and that it was his practice to test in that manner before he used gas from a new tank on a patient. When the investigators came to his office, he set up the apparatus and inhaled the gas to demonstrate how the apparatus worked and to show them that the gas would not render him insensible. Although he admitted using the gas occasionally to relieve a pain in his knee, he denied ever using the gas to get "high."

The Committee found plaintiff had violated section 7(11) by acting in an improper, unprofessional, and dishonorable way by intentionally incapacitating himself during office hours through the inhalation of nitrous oxide gas. The Department adopted the Committee's finding and suspended plaintiff's license to practice dentistry for six months. On administrative review, the trial court held that the finding of the Department was not against the manifest weight of the evidence.

OPINION

Plaintiff first contends that he was denied due process by the action of the Committee in that his requests for discovery and a continuance were refused and because his closing statement was limited.

■■ The purpose of pretrial discovery is to aid the party in preparation and presentation of his case or defense, assuring the truth and to eliminate as far as possible surprise, so that judgments will rest upon the merits and not upon the skillful maneuvering of counsel. (See *Stimpert v. Abdnour* (1962), 24 Ill. 2d 26, 179 N.E.2d 602; *People ex rel. Terry v. Fisher* (1957), 12 Ill. 2d 231, 145 N.E.2d 588.) Presumably, the need for discovery at the administrative level is the same, so as to require disclosure by the agency of evidence in its possession which might be helpful to an accused. (See Davis, Administrative Law of the Seventies §8.15 (1976); *Shively v. Stewart* (1966), 65 Cal. 2d 475, 421 P.2d 65, 55 Cal. Rptr. 217.) While an administrative body possesses broad discretion in conducting its hearings, its discretion must be exercised judicially and not arbitrarily. *Brown v. Air Pollution Control Board* (1967), 37 Ill. 2d 450, 227 N.E.2d 754; *Robert N. Nilles, Inc. v. Pollution Control Board* (1974), 17 Ill. App. 3d 890, 308 N.E.2d 640.

In the instant case, the motion for discovery asked for a list of the names and addresses of persons the Department might or might not call as witnesses, including their oral and written statements, and information concerning any documents or exhibits the Department intended to use during the hearings.

■■ We believe that the Department did not abuse its discretion in denying the motion for discovery, for the following reasons: First, this case does not involve the denial of a diligent request for prehearing discovery, as the request was made on the day of the hearing—which was more than three months after the complaint was filed and more than two months after plaintiff had been granted a continuance of a previously scheduled hearing and informed then that subsequent requests would be denied. Second, it appears that plaintiff was not prejudiced by the denial of his motion for prehearing discovery, because no documents or exhibits were identified or introduced by the Department, and the only persons it called as witnesses were known to plaintiff and testified to matters within his knowledge. The complaint alleged that the nitrous oxide was inhaled in the presence of the program director of the State Dental Society, an investigator for the Department, and the patient. Only those persons were called to testify and, although they were not named in the complaint, plaintiff's answer and affirmative defense made references to all three persons, indicating his knowledge as to their identity and the content of their testimony. Third, it appears that plaintiff was not handicapped in the preparation of his defense, because the three witnesses testified only to

the plaintiff's use of the nitrous oxide and his condition resulting therefrom; whereas, defendant admitted that he used the gas on their visits to his office, contending that he was testing it at the time of Jennings's visit and demonstrating how he used it to the other two witnesses.

Plaintiff also takes the position that the Committee abused its discretion by refusing his request for a continuance. In his motion, plaintiff asked additional time so that he could obtain an answer to his motion for discovery which was filed that same day, and he requested a prehearing conference "to narrow issues and to prepare stipulations of fact."

There is no absolute right to a continuance in an administrative proceeding, the agency possessing broad discretion in determining whether to allow a delay in the proceedings. *Brown v. Air Pollution Control Board; Fender v. School District No. 25* (1976), 37 Ill. App. 3d 736, 347 N.E.2d 270.

■■ Under the circumstances appearing here, we see no abuse of discretion in the denial of plaintiff's request for a continuance. The determining factors in this conclusion are the lack of due diligence exercised by plaintiff (*cf. Roberts v. McDaniel* (1959), 22 Ill. App. 2d 485, 161 N.E.2d 47) and the absence of a sufficient excuse to justify further delay. The complaint was filed against plaintiff on June 6, with the hearing originally scheduled on July 9. On June 26, plaintiff wrote to the Committee requesting additional time to obtain counsel. The Committee granted this request and rescheduled the hearing to September 17. When plaintiff obtained this continuance, he was warned by the Committee that no additional continuances would be allowed. Plaintiff did not retain the services of his attorneys until three weeks before the hearing, although he had initially discussed the charges with them prior to the originally scheduled July 9 hearing, and he offered no reason for this delay except that he had been speaking to other lawyers about the charges.

Furthermore, in support of his written motion, he stated his reasons for the request were to allow the Department time to answer his discovery motion and to allow the scheduling of a prehearing conference to narrow the issues. We do not see these as bases for a continuance because, as stated above, the motion for prehearing discovery was properly denied, and the Committee did in fact allow the attorneys to confer before commencing the hearing. Moreover, plaintiff does not indicate how the issues could have been narrowed or what stipulations of fact could have been entered into. Very little, if anything, could be done in these regards in view of his testimony that he inhaled the gas during the visits of the three witnesses but that he was either testing a new container of gas or demonstrating the use of the equipment.

Plaintiff also complains that the Committee limited his closing

statement to five minutes. It is a well-settled rule that objections not raised or arguments not made during administrative proceedings will not be heard for the first time on review. *St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals* (1968), 100 Ill. App. 2d 302, 241 N.E.2d 525, *cert. denied* (1969), 395 U.S. 946, 23 L. Ed. 2d 464, 89 S. Ct. 2019.

From our review of the hearing transcript, we are unable to find any express limitation by the Committee of the time allowed to the parties for summation, nor does it appear that plaintiff made any objection to any limitation of his time for closing argument. Furthermore, assuming that there was such a time limitation and the issue was properly preserved, plaintiff merely states that he needed additional time but fails to set forth what he was precluded from presenting to the Committee. Thus, we are unable to determine whether plaintiff was prejudiced if his time had been limited. *Cf. Schmidt v. Blackwell* (1973), 15 Ill. App. 3d 190, 304 N.E.2d 113.

■■ Plaintiff also contends "the evidence presented to the examining committee was insufficient to support its decision." The findings of an administrative agency are prima facie true and correct (Ill. Rev. Stat. 1975, ch. 110, par. 274), and the scope of the inquiry upon review, as it was in the trial court, is limited to ascertaining whether an agency's findings were contrary to the manifest weight of the evidence. *Kerr v. Police Board* (1974), 59 Ill. 2d 140, 319 N.E.2d 478; *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229.

Here, witnesses observed plaintiff inhaling nitrous oxide on two occasions in his office, and plaintiff has admitted doing so in their presence. He takes the position that he was not using it for personal pleasure, maintaining that at the time of Jennings's visit he was inspecting the equipment and that he was demonstrating the use and maintenance of the machine when the other witnesses were present. This position, however, conflicts with the testimony of the witnesses. Jennings testified that he had a 9 a.m. appointment with plaintiff and, while waiting in the reception room, he overheard an argument in which the plaintiff's voice appeared slow and slurred. He immediately left the office and, later that day when he telephoned and obtained a new appointment, plaintiff informed him that he had been inhaling nitrous oxide that morning. Later that week, when Jennings returned to plaintiff's office at 9 a.m. for his new appointment, he observed plaintiff inhaling the gas. The other two witnesses testified that plaintiff admitted using the gas to "feel good" and told them that it was not uncommon for dentists in that part of the town to get "high" on nitrous oxide. They also observed him using the gas, and each testified that plaintiff's voice was slurred, his demeanor jovial, that he acted as if he were under the influence of the gas, and that at no time did

plaintiff tell them he was demonstrating the use or the effect of the gas. ■■ The functions of a court reviewing an administrative decision are well circumscribed. The court may not reweigh the evidence or determine the credibility of witnesses. (*Peterson v. Board of Trustees* (1973), 54 Ill. 2d 260, 296 N.E.2d 721.) The fact that the testimony is conflicting is not a sufficient basis for reversal as being against the manifest weight of the evidence (*Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 342 N.E.2d 298; *Ceja v. State Police Merit Board* (1973), 12 Ill. App. 3d 52, 298 N.E.2d 378), and an agency's finding may not be so adjudged unless, from the record, it appears that the opposite conclusion is clearly evident (*Goslin v. Zoning Board of Appeals* (1976), 40 Ill. App. 3d 40, 351 N.E.2d 299; *Bock v. Long* (1972), 3 Ill. App. 3d 691, 279 N.E.2d 464). When there is evidence to support the agency's decision, it should be affirmed. *Rutledge v. Department of Registration & Education* (1966), 77 Ill. App. 2d 103, 222 N.E.2d 195; *Schyman v. Department of Registration and Education* (1956), 9 Ill. App. 2d 504, 133 N.E.2d 551.

●■ Applying these rules to the facts and circumstances here, we conclude that the Committee's findings and the decision of the Board were not against the manifest weight of the evidence.

■■ We note our disagreement with the argument of plaintiff that the use of nitrous oxide is neither improper, unprofessional, nor dishonorable conduct as charged, because the gas is not a controlled substance and therefore not illegally used. It was held in *Collins v. People ex rel. Stephens* (1966), 67 Ill. App. 2d 265, 213 N.E.2d 770, *rev'd on other grounds* (1966), 35 Ill. 2d 499, 221 N.E.2d 254, that conduct which would constitute a violation of the Dental Practice Act need not be accompanied by criminality, venality, or moral turpitude. Neither do we accept plaintiff's argument that it has not been established, as charged, that his use of the gas was during office hours. Jennings testified that his appointments were at 9 a.m. and that he arrived at about that hour on each visit. The other two witnesses testified that when they arrived at about 9 a.m. the office door was open and the waiting room lights were on. They stated that they remained with plaintiff about one-half hour and that, when they left, one of them saw a person or persons seated in the waiting room. In view thereof, we believe that it was sufficiently established that the instances complained of occurred during office hours.

For the reasons stated, the judgment affirming the order of the Department of Registration and Education is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.